UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

|  |  |
|---|---|
| IN RE SEPTEMBER 11 LITIGATION | : Civil No.<br>: 21 MC 97 (AKH)<br>: 21 MC 101 (AKH)<br>: |
| - and - | : This Declaration relates to:<br>: 03 CV 7022 (AKH) |
| IN RE SEPTEMBER 11 PROPERTY DAMAGE AND<br>BUSINESS LOSS LITIGATION | : SUZANNE MLADENIK v.<br>: AMERICAN AIRLINES, INC.,<br>: et al.<br>: |
|  | : **DECLARATION OF**<br>: **DESMOND T. BARRY, JR.** |

-------------------------------------------------------------------- X

1.     I am an attorney and member of the law firm of Condon & Forsyth LLP,

co-counsel for defendants American Airlines, Inc. and AMR Corporation in this litigation and I

am fully familiar with all prior pleadings and proceedings.

2.     I submit this declaration in support of the motion by defendants American

Airlines, Inc., AMR Corporation and Globe Aviation Services Corporation for an Order: (1)

approving the settlement; (2) entering final judgment pursuant to Rule 54(b) of the Federal Rules

of Civil Procedure; (3) ruling that the liability limitation contained in Section 408(a)(1) of the

Air Transportation Safety and System Stabilization Act applies to the settlement amount; and (4)

dismissing the Complaint with prejudice as to all defendants.

3.     Annexed hereto as Exhibit "A" is a true and accurate copy of the executed

Confidential Stipulation of Settlement in *Mladenik v. American Airlines, Inc., et al.*, 03 Civ.

7022 (AKH), with the settlement amount redacted.  An unredacted copy of the Confidential

Stipulation of Settlement is being filed with the Court under seal.

Pursuant to 28 U.S.C. Section 1746, I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that I executed this declaration on July 26, 2007, at New York, New York.

Desmond T. Barry, Jr.

# Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :
                           :  No.: 21 MC 97 (AKH)
                           :

IN RE SEPTEMBER 11 LITIGATION    :  **THIS DOCUMENT RELATES TO:**
                           :  **03 CV 7022 (AKH)**
                           :  **SUZANNE MLADENIK v.**
                           :  **AMERICAN AIRLINES, INC., et al.**
                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## <u>CONFIDENTIAL STIPULATION OF SETTLEMENT</u>

By and through their attorneys, Defendants AMERICAN AIRLINES, INC. (hereinafter "AMERICAN"), AMR CORPORATION (hereinafter "AMR") and GLOBE AVIATION SERVICES CORPORATION (hereinafter "GLOBE"), and PLAINTIFF SUZANNE MLADENIK, Individually and as Administratrix of the Estate of JEFFREY PETER MLADENIK, deceased, and on behalf of all heirs, next of kin and survivors of JEFFREY PETER MLADENIK, deceased, (hereinafter "PLAINTIFF") hereby agrees:

1.    In consideration of the sum of

to be paid by the Insurers of AMERICAN and AMR, and the sum of

to be paid by the Insurers of GLOBE, for a total of the payments to PLAINTIFF of                                         PLAINTIFF agrees to release and discharge AMERICAN, AMR, GLOBE and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), and agree to execute a Confidential Release in the form attached hereto as Exhibit "1".

PLAINTIFF agrees that the sum of

paid by the insurers of AMERICAN and AMR, shall be deducted from the

1

settlement amount payable by AMERICAN and AMR.

      2.     PLAINTIFF has expressed an intention and desire to use a portion of the said total payments to provide Cash at Settlement and the balance of said payments to finance the purchase of an Annuity Contract which would provide PLAINTIFF Future Periodic Payments. The amount of Cash at Settlement and the amount of said payments that are to fund said Annuity Contract, together with the terms applicable to same, will be set forth and specified in the Confidential Release, in the form attached hereto as Exhibit "1."

      3.     The parties to this Agreement recognize the legitimate interest of AMERICAN, AMR and GLOBE in ensuring that the full amounts paid pursuant to this Agreement count against the limits on their respective liability established by Section 408(a)(1) of the Air Transportation Safety and System Stabilization Act ("ATSSSA"). AMERICAN, AMR, and GLOBE are not willing to enter into this Agreement absent that assurance. The parties therefore agree that:

          (a)    AMERICAN, AMR and GLOBE shall have no obligations hereunder, unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts paid hereunder count against the limits of liability established by Section 408(a)(1) of the ATSSSA; and

          (b)    No settlement payments shall be made pursuant to this Agreement unless and until a final, non-appealable determination is issued by a court of competent jurisdiction confirming that all amounts to be paid hereunder count against the limits of liability established by Section 408(a)(1) of the ATSSSA.

4.    Within 21 days after execution of this Confidential Stipulation of Settlement, AMERICAN, AMR, and GLOBE, shall seek from the United States District Court for the Southern District of New York or an appropriate federal appellate court the non-appealable determination described in paragraph "3". The parties agree, and PLAINTIFF specifically consents, that the motion for the non-appealable final determination will include a request that the Court dismiss with prejudice all proceedings by PLAINTIFF against AMERICAN, AMR and GLOBE, and any and all other defendants named in any of the individual or Master Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each of the defendants listed in Appendix "A" to the Confidential Release in the form attached hereto as Exhibit "1" ("RELEASEES"), and all RELEASEES' parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities, officers, directors, employees, agents, heirs, executors, administrators, successors and assigns.

5.    Following execution of this Confidential Stipulation of Settlement, PLAINTIFF shall submit to Judge Alvin K. Hellerstein a Motion for a Compromise Order approving the settlement and the distribution of the settlement proceeds and authorizing PLAINTIFF to execute and deliver a Confidential Release in the form attached hereto as Exhibit "1".

6.    Upon receipt of authorization from the Court, PLAINTIFF shall deliver to AMERICAN, AMR and GLOBE an executed Confidential Release in the form attached hereto as Exhibit "1". The execution of said Confidential Release does not preclude the PLAINTIFF from continuing any direct action filed against terrorists and/or sponsors of terrorism arising from or relating to the death of JEFFREY PETER MLADENIK as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-01616, United States District Court, District of Columbia (JR); *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570;

3

and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:03-CV-09849, United States District Court, Southern District of New York (RCC).

7.    Subject to compliance with all conditions set forth above, within 30 days after the non-appealable determination described in paragraphs "3" and "4" is issued or within 30 days after receipt by counsel for AMERICAN, AMR and GLOBE of the executed Confidential Release, whichever is later, AMERICAN, AMR and GLOBE's insurers will pay to PLAINTIFF the settlement funds as indicated in the Confidential Release.  In the event that a court of competent jurisdiction declines to enter the final non-appealable determination referenced in paragraphs "3" and "4", this Confidential Stipulation of Settlement shall be void, and PLAINTIFF shall be entitled to reinstate her case against the RELEASEES.

8.    The parties acknowledge that this Agreement is entered into solely for the purpose of amicably resolving the parties' dispute and the parties specifically acknowledge and agree that this Agreement does not constitute an admission of liability by any party.

9.    This Agreement and the performance thereunder shall be governed by and construed under the laws of the State of New York, without giving effect to its conflict of law provisions that would result in the application of the law of any other jurisdiction.

10.    This Agreement may not be modified orally and can only be modified by means of a written agreement signed by the PLAINTIFF, AMERICAN, AMR and GLOBE.

11.    The amount of the payments under this settlement shall remain confidential. Dissemination of the amount of payments under this settlement shall be restricted to only the parties, their attorneys, employees, agents, and insurance representatives who have a need to know the amount of the settlement and to any court referenced in paragraphs "3" and "4". No party, attorney, employee, agent or insurance representative of a party shall disclose the

4

settlement amount unless required to do so by court order.

    12.    This Agreement may be executed in counterparts.

Dated: New York, New York
This _13_ day of _July_, 2007.

MOTLEY RICE

By: _Mary Schiavo_
    Mary F. Schiavo (    )

28 Bridgeside Blvd.
P.O. Box 1792
Mt. Pleasant, South Carolina  29465
Tel.: (843)216-9000
Fax: (843)216-9450

-and-

HANLY CONROY, LLP
112 Madison Avenue
New York, New York  10016
Tel.:  (212)784-6400
Fax:  (212)784-6420

Attorneys for PLAINTIFF
SUZANNE MLADENIK


CONDON & FORSYTH LLP

By: _Desmond T. Barry_

    Desmond T. Barry, Jr. (DB 8066)

Times Square Tower
7 Times Square
New York, New York  10036
Tel.: (212)490-9100
Fax: (212)370-4483

-and-

DEBEVOISE & PLIMPTON LLP

New York, New York  10022
Tel.: (212)909-6000
Fax: (212)909-6836

Attorneys for Defendants
AMERICAN AIRLINES, INC. and
AMR CORPORATION

JONES, HIRSCH, CONNORS & BULL P.C.

By:_____
        James P. Connors (JC 5421)

One Battery Park Plaza
New York, New York 10004
Tel:  (212) 527-1000
Fax:  (212) 527-1680

-and-

Paul V. Kelly
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts  02110
Tel.: (617) 338-9300
Fax:  (617) 338-9911

- and-

Gary W. Westerberg
LORD, BISSELL & BROOK LLP
111 South Wacker Drive
Chicago, Illinois  60606
Tel.: (312) 443-0700
Fax: (312) 443-0336

Attorneys for Defendant
GLOBE AVIATION SERVICES
CORPORATION

GLOBAL AEROSPACE UNDERWRITING
MANAGERS

By:_____
        John P. Meehan

For and on behalf of the insurers for
AMERICAN AIRLINES, INC. and
AMR CORPORATION


AIG AVIATION, INC., as aviation manager
for NATIONAL UNION FIRE INSURANCE
COMPANY of PITTSBURGH,
PENNSYLVANIA


By:_____
        Mark Breitenbach

Insurance company for GLOBE AVIATION
SERVICES CORPORATION


EMPLOYERS INSURANCE OF WAUSAU,
A MUTUAL COMPANY


By:_____
        Patricia Aurichio

Insurance company for GLOBE AVIATION
SERVICES CORPORATION

6

JONES, HIRSCH, CONNORS & BULL P.C.

By: _____
    James P. Connors (JC 5421)

One Battery Park Plaza
New York, New York 10004
Tel: (212) 527-1000
Fax: (212) 527-1680

-and-

Paul V. Kelly
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts 02110
Tel.: (617) 338-9300
Fax: (617) 338-9911

- and-

Gary W. Westerberg
LORD, BISSELL & BROOK LLP
111 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 443-0700
Fax: (312) 443-0336

Attorneys for Defendant
GLOBE AVIATION SERVICES
CORPORATION


GLOBAL AEROSPACE UNDERWRITING
MANAGERS

By: _____
    John P. Meehan

For and on behalf of the insurers for
AMERICAN AIRLINES, INC. and
AMR CORPORATION


AIG AVIATION, INC., as aviation manager
for NATIONAL UNION FIRE INSURANCE
COMPANY of PITTSBURGH,
PENNSYLVANIA

By: _____
    Mark Breitenbach

Insurance company for GLOBE AVIATION
SERVICES CORPORATION


EMPLOYERS INSURANCE OF WAUSAU,
A MUTUAL COMPANY

By: _____
    Patricia Aurichio

Insurance company for GLOBE AVIATION
SERVICES CORPORATION

6

NYOFFICE 666087v1

JONES, HIRSCH, CONNORS & BULL P.C.

By:_____
    James P. Connors (JC 5421)

One Battery Park Plaza
New York, New York 10004
Tel: (212) 527-1000
Fax: (212) 527-1680

-and-

Paul V. Kelly
KELLY, LIBBY & HOOPES, P.C.
175 Federal Street
Boston, Massachusetts 02110
Tel.: (617) 338-9300
Fax: (617) 338-9911

- and-

Gary W. Westerberg
LORD, BISSELL & BROOK LLP
111 South Wacker Drive
Chicago, Illinois 60606
Tel.: (312) 443-0700
Fax: (312) 443-0336

Attorneys for Defendant
GLOBE AVIATION SERVICES
CORPORATION

GLOBAL AEROSPACE UNDERWRITING
MANAGERS

By:_____
    John P. Meehan

For and on behalf of the insurers for
AMERICAN AIRLINES, INC. and
AMR CORPORATION


AIG AVIATION, INC., as aviation manager
for NATIONAL UNION FIRE INSURANCE
COMPANY of PITTSBURGH,
PENNSYLVANIA

By:_____
    Mark Breitenbach

Insurance company for GLOBE AVIATION
SERVICES CORPORATION


EMPLOYERS INSURANCE OF WAUSAU,
A MUTUAL COMPANY


By:_____
    Patricia Aurichio

Insurance company for GLOBE AVIATION
SERVICES CORPORATION

6

# Exhibit 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
               :

               :   No.: 21 MC 97 (AKH)
               :

IN RE SEPTEMBER 11 LITIGATION   :   **THIS DOCUMENT RELATES TO:**
               :   **03 CV 7022 (AKH)**
               :   **SUZANNE MLADENIK v.**
               :   **AMERICAN AIRLINES, INC., et al.**
               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>CONFIDENTIAL RELEASE</u>

A.    PLAINTIFF SUZANNE MLADENIK, Individually and as Administratrix of the Estate

of JEFFREY PETER MLADENIK, deceased, and on behalf of all heirs, next of kin and

survivors of JEFFREY PETER MLADENIK, deceased, as RELEASOR, and in consideration of

the sum of

            to be paid by the Insurers of AMERICAN AIRLINES, INC. (hereinafter,

"AMERICAN") and AMR CORPORATION (hereinafter, "AMR"), and the sum of

                                            to be

paid by the Insurers of GLOBE AVIATION SERVICES CORPORATION (hereinafter,

"GLOBE"), for a total of the payments to RELEASOR of

               of which to be used to purchase a structured

settlement annuity as set out in Paragraph B.2.), hereby releases and discharges AMERICAN,

AMR, GLOBE, and any and all other defendants named in any of the individual or Master

Complaints filed under civil action number 21 MC 97 (AKH), including without limitation each

of the defendants listed in Appendix "A" hereto ("RELEASEES"), and all RELEASEES'

parents, subsidiaries, affiliated corporations, partnerships, insurers, related business entities,

                                                 **EXHIBIT 1**

officers, directors, employees, agents, heirs, executors, administrators, successors and assigns from all actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, trespasses, damages, judgments, executions, claims, and demands whatsoever, in law, admiralty or equity, which the RELEASOR, RELEASOR'S heirs, executors, administrators, successors and/or assigns ever had, now have or hereafter can, shall or may, have against the RELEASEES for, upon, or by reason of any matter, cause, or thing whatsoever relating to or arising out of the following: wrongful death of and personal injuries to JEFFREY PETER MLADENIK, whether assertable by the heirs or personal representative of JEFFREY PETER MLADENIK, or by any other person or entity entitled by law to recover damages as a result of the death of or personal injury to JEFFREY PETER MLADENIK, and whether characterized as wrongful death claims, survival or survivorship claims, personal injuries or otherwise; loss of or damage to the baggage, personal effects, or other property of JEFFREY PETER MLADENIK; and any and all other losses, damages and/or injuries relating to or arising out of JEFFREY PETER MLADENIK having been a passenger on American Flight 11 on September 11, 2001 (hereinafter, "the death of JEFFREY PETER MLADENIK") from the beginning of the world to the day of the date of this Confidential Release.

RELEASOR agrees that the sum of

paid by the insurers of AMERICAN and AMR, shall be deducted from the settlement amount payable by AMERICAN and AMR.

B.    Payments to RELEASOR:

1.    Cash at Settlement and Amounts Previously Paid: RELEASOR has received $[LUMP SUM], receipt of which is hereby acknowledged.

**EXHIBIT 1**

2.    Periodic Payments: In addition to the amounts stated in Paragraph B.1, the following Periodic Payments will be made resulting from the wrongful death and/or personal physical injuries relating to or arising out of the death of JEFFREY PETER MLADENIK:

(a) To [NAME] the following guaranteed lump sum: [AMOUNT] paid on [DATE].

(b) Should [NAME] die before [DATE], then the guaranteed lump sum set forth in Paragraph B.2(a) shall instead be paid, as it becomes due, to the estate of [NAME] with the last guaranteed payment to be made on [DATE].

(c) To [NAME] the following guaranteed lump sum: [AMOUNT] paid on [DATE].

(d) Should [NAME] die before [DATE], then the guaranteed lump sum set forth in Paragraph B.2(c) shall instead be paid, as it becomes due, to the estate of [NAME] with the last guaranteed payment to be made on [DATE].

(e) The individuals named in (a) through (d) above shall have the right, at any time during the term of this Confidential Release, to submit a request to change the Beneficiary by filing a written request with the owner of the annuity. This request will be reviewed by the owner of the annuity and if approved by the owner of the annuity and the issuing annuity company it will become effective. Said request will be made in writing.

(f) All sums set forth herein constitute damages on account of personal injuries or sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.

C.    Financing of Periodic Payment Obligation:

1.    Assignment of Obligation: It is understood and agreed by and between the parties hereto that the RELEASEES may, as a matter of right and in their sole discretion, assign their duties and obligations to make such future payments as set forth in Paragraphs B.2(a), (b), (c), and (d) to [ASSIGNEE] pursuant to a "Qualified Assignment and Release Agreement," within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, in the form attached hereto as Appendix "B".    The Assignee's obligation for payment of the Periodic Payments shall be no greater that that of RELEASEES (whether by judgment or agreement) immediately preceding the assignment of the Periodic Payments obligation.    Such assignment is hereby accepted by the RELEASOR without right of rejection and in full discharge and release of the duties and Periodic Payment obligations of the RELEASEES with respect to such future payments. The RELEASOR recognizes that, in the event of such an assignment, the [ASSIGNEE] shall be the sole obligor with respect to the Periodic Payments obligation, and that all other releases with respect to the Periodic Payments obligation that pertain to the liability of the RELEASEES shall thereupon become final, irrevocable and absolute. If the RELEASEES assign the duties and obligations as provided herein, it is understood and agreed by and between the parties that [ASSIGNEE], as the assignee, shall make said future payments directly to the respective payees designated in Paragraphs B.2(a), (b), (c), and (d).

THE PARTIES HERETO EXPRESSLY UNDERSTAND AND AGREE THAT WHEN AN ASSIGNMENT OF THE DUTIES AND OBLIGATIONS TO MAKE SAID FUTURE PAYMENTS IS MADE BY THE RELEASEES TO [ASSIGNEE] PURSUANT TO THIS CONFIDENTIAL RELEASE, ALL OF THE DUTIES AND RESPONSIBILITIES OTHERWISE IMPOSED UPON THE RELEASEES BY THIS CONFIDENTIAL RELEASE WITH RESPECT TO SUCH FUTURE PAYMENTS SHALL CEASE, AND INSTEAD BE

4

**EXHIBIT 1**

BINDING SOLELY UPON [ASSIGNEE]. IT IS FURTHER UNDERSTOOD AND AGREED THAT WHEN AN ASSIGNMENT IS MADE, THE RELEASEES SHALL BE RELEASED FROM ALL OBLIGATIONS TO MAKE SUCH FUTURE PAYMENTS AND [ASSIGNEE] SHALL AT ALL TIMES REMAIN DIRECTLY AND SOLELY RESPONSIBLE FOR, AND SHALL RECEIVE CREDIT FOR, THE FUTURE PAYMENTS. IT IS FURTHER UNDERSTOOD AND AGREED THAT WHEN AN ASSIGNMENT IS MADE, [ASSIGNEE] ASSUMES THE DUTIES AND RESPONSIBILITIES OF THE RELEASEES WITH RESPECT TO SUCH FUTURE PAYMENTS.

2.    Third Party Payment: It is further understood and agreed by the parties that all future payments as set forth in Paragraphs B.2(a), (b), (c), and (d) may, solely at the option of the RELEASEES, or their assignee, [ASSIGNEE], be financed by the purchase of an Annuity Contract from [COMPANY] (the "Annuity Contract"). When such an Annuity Contract is purchased, the assignee, [ASSIGNEE], shall be the owner of the Annuity Contract and shall have and retain all rights of ownership in the Annuity Contract. For its own convenience, the assignee shall direct [COMPANY] to make all the periodic payments directly to the respective payees designated in Paragraphs B.2(a), (b), (c), and (d). Such payments will be applied against the obligation of the RELEASEES or their assignee and shall operate as a *pro tanto* discharge of the scheduled obligations set forth in this Confidential Release. The respective payees designated in Paragraph B.2. shall be responsible for maintaining a current mailing address with [COMPANY].

3.    Status of RELEASOR: The RELEASOR shall, at all times, remain a secured creditor of the RELEASEES' Assignee(s) or its/their assignee and shall have no rights in the Annuity Contract nor in any other assets of the RELEASEES or their assignee(s). The

RELEASEES or their assignee(s) shall not be required to set aside sufficient assets or secure their obligation to the RELEASOR in any manner whatsoever. The RELEASOR acknowledges that the RELEASOR has no right to receive the present value of the payments due the RELEASOR pursuant to Paragraphs B.2(a), (b), (c), and (d) or to control the investment of, or accelerate, defer, increase or decrease the amount of any payment required to be made to the RELEASOR. The RELEASOR shall only be entitled to receive the payments specified in Paragraphs B.2(a), (b), (c), and (d), as they are due.

    4.    Dates of Birth: [NAME] hereby warrants and represents that she was born on [DATE OF BIRTH], that [NAME] was born on [DATE OF BIRTH] and that [NAME] was born on [DATE OF BIRTH]. Notwithstanding anything to the contrary herein, if the actual dates of birth are not as stated above, and if the RELEASEES or their assigned rely or have relied to their detriment on the accuracy of the above-stated dates of birth, the RELEASEES or their assignee(s) may adjust the amount and/or timing of the remaining Periodic Payments so that no additional cost than that necessary to purchase the Annuity Contract is incurred by the RELEASEES or their assignee(s).

D.    No Changes in Future Payments: Neither the RELEASOR, her estate, nor any subsequent beneficiary or recipient of any payments or any part of any payments under this Confidential Release, shall have the right to accelerate, defer, increase or decrease any of the Periodic Payments; or sell, assign, pledge, hypothecate or otherwise transfer or encumber, either directly or indirectly, unless such sale, assignment, pledge, hypothecation or other transfer or encumbrance (any such transaction being hereinafter referred to as a "Transfer") has been approved in advance in a "Qualified Order" as defined in Section 5891(b)(2) of the Code (a

"Qualified Order") and otherwise complies with applicable state law, including without limitation any applicable state structured settlement protection statute.

E.      Discharge of Obligation:  The obligation of the RELEASEES or the Assignee(s) to make each Periodic Payment to the payees designated to receive such payment shall automatically be discharged upon the mailing of a valid check in the amount of such payment to the address of such payee most recently designated pursuant to Paragraph B.2. of this Confidential Release or upon completion of an electronic funds transfer in the amount of such payment to the deposit account of such payee most recently designated pursuant to Paragraph B.2. of this Confidential Release.

F.      The sums described in Paragraphs A and B above represent all of the consideration that the RELEASEES will ever be required to pay the RELEASOR or any other person or entity for the claims described above.

FOR AND IN FURTHER CONSIDERATION of the payments described above, the RELEASOR agrees as follows:

1.      The RELEASOR agrees to protect, indemnify, and hold harmless RELEASEES from and against all actions, causes of action, remedies, suits, debts, covenants, contracts, controversies, agreements, promises, damages (including, but not limited to, pecuniary, non-pecuniary, moral, patrimonial, compensatory and punitive damages), liabilities, judgments, executions, claims, demands of whatsoever nature, known and unknown (including, but not limited to, liens or liabilities of whatsoever nature, including without limitation, those relating to or arising out of any worker's compensation payments and those that may arise by reason of the legal or tax consequences of this Confidential Release), and all costs and expenses (including, but not limited to, reasonable attorneys' fees) in defending any such actions, etc., brought against

7

**EXHIBIT 1**

RELEASEES by anyone claiming by, through, or under RELEASOR, relating to or arising out of the death of JEFFREY PETER MLADENIK whether anticipated or unanticipated, however caused and whether by sole, joint, or concurrent negligence, strict liability, treaty liability, Intercarrier Agreement liability, contractual liability, or otherwise of RELEASEES.

2.    RELEASOR recognizes, acknowledges, and accepts that there is a risk that, after the execution of this Confidential Release, (a) RELEASOR will claim or suffer personal bodily discomfort, emotional distress, or economic loss that is in some way caused by or related to the death of JEFFREY PETER MLADENIK, but which are unknown and unanticipated at the time this Confidential Release is executed; (b) the damages presently known may be or may become more extensive than RELEASOR now expects or anticipates; and (c) the laws governing what damages are available to her may change. RELEASOR accepts these risks, and this Confidential Release shall apply to all unknown and unanticipated results of the death of JEFFREY PETER MLADENIK as well as those known and anticipated. The provisions of any local, state, federal, or foreign law, statute, or judicial decision providing in substance that releases shall not extend to unknown or unanticipated claims, damages, or injuries are hereby expressly waived.

3.    The payments described above and the execution of this Confidential Release are the result of a compromise of disputed claims and shall not at any time for any purpose be considered as an admission of liability, responsibility, or proportionate responsibility of RELEASEES for any wrongdoing, negligence, or other culpable conduct in connection with the death of JEFFREY PETER MLADENIK. RELEASOR acknowledges that RELEASEES expressly continue to deny and disclaim such liability and responsibility and intend merely to avoid further litigation and buy their peace. This Confidential Release is a final and full

settlement of all claims against RELEASEES and shall not be subject to any claim of mistake of fact or law by RELEASOR.

4.    The amount of the payments of the settlement shall remain confidential for the benefit of both parties. The parties shall not disclose the amount of the payments of the settlement agreement, except to the parties, their attorneys, employees, agents, and insurance representatives who have a need to know the amount of the settlement, and to any court of competent jurisdiction. No party, attorney, employee, agent or insurance representative of a party shall disclose the amount of the settlement payments unless required to do so by court order.

5.    RELEASOR represents and warrants that she is not relying on the advice of the RELEASEES, or anyone associated with them, as to legal, tax (income, estate, gift, or otherwise), or other consequences of any kind arising out of this Confidential Release; that she has not relied on any representations or statements, written or oral, of RELEASEES, including, but not limited to, any factual representation regarding the death of JEFFREY PETER MLADENIK except those set forth in this Confidential Release; and that she is knowingly and voluntarily signing this Confidential Release and is not subject to duress, coercion, or undue influence by the RELEASEES or anyone else.

6.    RELEASOR represents and warrants that she has not filed, will not file, or cause to be filed, any other actions, causes of action, suits, claims, or demands, of any nature whatsoever, arising from or relating to the death of JEFFREY PETER MLADENIK in any court or tribunal, or with any adjudicatory, legislative, executive or other governmental or private body or agency anywhere in the U.S. or abroad against RELEASEES. This Confidential Release does not preclude the RELEASOR from continuing any direct action filed against terrorists and/or

9

**EXHIBIT 1**

sponsors of terrorism arising from or relating to the death of JEFFREY PETER MLADENIK, as identified in *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:02-CV-01616, United States District Court, District of Columbia (JR); *In re Terrorist Attacks on September 11, 2001*, 03 MDL 1570; and *Burnett, et al. v. Al Baraka Investment and Development Corp., et al.*, 1:03-CV-09849, United States District Court, Southern District of New York (RCC).

7.    RELEASOR understands that she has the right to obtain legal counsel to review and evaluate this Confidential Release, and RELEASOR attests that she has done so or agreed to waive this right. RELEASOR further understands and agrees that she shall be responsible for the payment of all expenses arising from and in connection with any matters related to the death of JEFFREY PETER MLADENIK other than any expenses previously paid for by the RELEASEES, and that RELEASOR shall be responsible for the payment of any attorneys' fees and legal expenses that she has incurred or may incur. RELEASOR further agrees that statutes providing for payment of interest, costs or expenses with respect to settlement proceeds in this action are inapplicable.

8.    RELEASOR represents and warrants that she will satisfy all outstanding workers' compensation liens, medical liens, attorneys' fees liens, and all other liens, if any, from the proceeds of this settlement.

9.    This Confidential Release and the performance thereunder, shall be governed by and construed under the laws of the State of New York, without giving effect to its conflicts of law provisions that would result in the application of the law of any other jurisdiction.

10.    This Confidential Release may not be modified orally and can only be modified by means of a written agreement signed by the RELEASOR, AMERICAN, AMR, and GLOBE.

11.    This Confidential Release can be executed in multiple originals.

In witness whereof, the RELEASOR has hereunto set RELEASOR'S hand and seal on

the _____ day of _____, 2007.

_____
SUZANNE MLADENIK, RELEASOR

STATE OF _____    )
                            ) ss.:
COUNTY OF _____      )

On _____, 2007, before me personally came SUZANNE MLADENIK, to me known, and known to me to be the individual described herein, and who executed the foregoing CONFIDENTIAL RELEASE, and duly acknowledged to me that she executed the same.

_____
NOTARY PUBLIC

NYOFFICE 666089v1                                                    **EXHIBIT 1**

# APPENDIX A

AEROFLOT, a Russian corporation;

AIR CANADA

AIR FRANCE, a French corporation

AIR JAMAICA, a Jamaican corporation

AIR TRANSPORT ASSOCIATION OF AMERICA, INC.

AIRTRAN AIRLINES

ALASKA AIRLINES, INC.

AMERICA WEST AIRLINES, INC.

AMERICAN AIRLINES, INC.

AMERICAN EAGLE AIRLINES, INC.

AMERICAN TRANS AIR, INC.

AMR CORPORATION

ANA, a Japanese corporation

ARGENBRIGHT SECURITY, INC.

ATA AIRLINES, INC.

ATLANTIC COAST AIRLINES, INC.

AUSTRIAN AIRLINES, an Austrian corporation

BARKSHIRE, INC.

BRITISH AIRWAYS, a United Kingdom corporation

BRITISH MIDLAND AIRWAYS, LTD, a United Kingdom corporation

BURNS INTERNATIONAL SECURITY SERVICES CORP.

BURNS INTERNATIONAL SERVICES CORP.

NYOFFICE 666089v1                                    **EXHIBIT 1**

BWIA INTERNATIONAL AIRWAYS, a Trinidad/Tobago corporation

CAPE AIR

CITY OF PORTLAND, MAINE

COLGAN AIR, INC.

CONTINENTAL AIRLINES, INC.

DELTA AIR LINES INC.

DELTA EXPRESS

EMERY ROTH AND PARTNERS LLC d/b/a EMERY ROTH & SONS

ETHIOPIAN AIRLINES S.C.

FRONTIER AIRLINES, INC.

GLOBE AVIATION SERVICES CORPORATION

GLOBE AIRPORT SECURITY SERVICES, INC.

HEIMANN SYSTEMS CORP.,

HUNTLEIGH USA CORP.

ICTS INTERNATIONAL NV

INVISION TECHNOLOGIES, INC.

JETBLUE

KLM, a Dutch corporation

KOREAN AIRLINES

L-3 COMMUNICATIONS CORPORATION

L-3 COMMUNICATIONS CORPORATION SECURITY AND DETECTION SYSTEMS

L-3 COMMUNICATIONS HOLDINGS, INC.

LESLIE E. ROBERTSON ASSOCIATES

NYOFFICE 666089v1                                                              **EXHIBIT 1**

LUFTHANSA, a German corporation

MAGNUSSON KLEMENCIC ASSOCIATES

MASSACHUSETTS PORT AUTHORITY

METROPOLITAN WASHINGTON AIRPORT AUTHORITY

MIDWEST EXPRESS AIRLINES

MINORU YAMASAKI ASSOCIATES

NATIONAL AIRLINES

NORTHWEST AIRLINES

PAN AMERICAN AIRWAYS

PINKERTON'S, INC.

PORT AUTHORITY OF NEW YORK & NEW JERSEY

QANTAS AIRWAYS LIMITED

QUANTUM MAGNETICS, INC.

SAUDI ARABIAN AIRLINES, a Saudi Arabian corporation

SCANDINAVIAN AIRLINES SYSTEM, SAS, a Swedish corporation

SECURICOR PLC

SECURITAS AB

SILVERSTEIN PROPERTIES, INC.

SKILLING WARD MAGNUSSON

SWISS, a Swiss corporation

SWISSAIR TRANSPORT COMPANY

TACA INTERNATIONAL AIRLINES, an El Salvador corporation

TEM ENTERPRISES d/b/a CASINO EXPRESS

14

**EXHIBIT 1**

THE BOEING COMPANY

TISHMAN REALTY & CONSTRUCTION CO., INC.

UAL CORPORATION

UNITED AIR LINES, INC.

US AIRWAYS, INC.

VIRGIN ATLANTIC AIRWAYS LTD, a United Kingdom corporation

WORLD TRADE CENTER PROPERTIES LLC

NYOFFICE 666089v1                                                                              **EXHIBIT 1**

# Qualified Assignment, Release, and Pledge Agreement

Claimant-Secured Party:

Assignor:

Assignee-Debtor:

Annuity Issuer:

Annuity (Policy No.):

Effective Date:

This Qualified Assignment, Release, and Pledge Agreement is made and entered into by and among the parties hereto as of the Effective Date with reference to the following facts:

A.  Claimant-Secured Party has executed a settlement agreement or release dated _____, _____ (the "Settlement Agreement") which requires Assignor to make certain periodic payments to or for the benefit of Claimant-Secured Party as stated in Addendum No.1 of this Agreement (the "Periodic Payments").

B.  The parties desire to effect a "qualified assignment" within the meaning and subject to the conditions of section 130(c) of the Internal Revenue Code of 1986, as amended (the "Code").

C.  Assignee-Debtor desires to grant to Claimant-Secured Party a security interest to secure the liability being assumed by Assignee-Debtor to make the Periodic Payments.

NOW THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the parties agree as follows:

1.  Subject to qualification under section 130(c) of the Code, Assignor hereby assigns and Assignee-Debtor hereby assumes all of Assignor's liability to make the Periodic Payments. Assignee-Debtor assumes no liability to make any other payment. Claimant-Secured Party hereby accepts and consents to the assignment by Assignor and the assumption by Assignee-Debtor of the liability to make the Periodic Payments, and upon the Effective Date Claimant-Secured Party releases Assignor from all liability to make the Periodic Payments.

2.  The Periodic Payments constitute damages on account of personal injury or sickness in a case involving physical injury or physical sickness within the meaning of sections 104(a)(1) or 104(a)(2) and 130(c) of the Code.

3.  Assignee-Debtor's liability to make the Periodic Payments is no greater than that of Assignor as determined immediately prior to this Agreement. None of the Periodic Payments may be accelerated, deferred, increased or decreased, anticipated, sold, assigned, pledged, or encumbered by Claimant-Secured Party.

4.  The obligation assumed by Assignee-Debtor to make each applicable Periodic Payment shall be fully discharged upon the mailing of a valid check or wire transfer of funds on or before the due date for such Periodic Payment to the address of record specified by Claimant-Secured Party if such check is duly negotiated or such wire transferred funds are duly received.

5.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of New York (without giving effect to the choice-of-law rules thereof).

16

**EXHIBIT 1**

6.  Assignee-Debtor may fund the Periodic Payments by purchasing the Annuity from Annuity Issuer to serve as a "qualified funding asset" within the meaning of section 130(d) of the Code. All rights of ownership and control of the Annuity shall be and remain vested in Assignee-Debtor except as provided in paragraphs 11 and 12 of this Agreement.

7.  Assignee-Debtor may have Annuity Issuer send payments from the Annuity directly to the payee(s) specified in Addendum No. 1. Such direction of payment shall be solely for Assignee-Debtor's convenience and shall not provide Claimant-Secured Party or any payee with any rights of ownership or control over the Annuity or against Annuity Issuer.

8.  Assignee-Debtor's liability to make the Periodic Payments shall continue without diminution regardless of any bankruptcy or insolvency of Assignor.

9.  In the event that the Settlement Agreement is declared terminated by a court of competent jurisdiction, the parties shall act in accordance with the orders of the court; provided however, that nothing in this paragraph shall preclude a party to this Agreement from appealing any order or judgment of a court. In the event that section 130(c) of the Code has not been satisfied, (i) the assignment by Assignor to Assignee-Debtor of the liability to make the Periodic Payments to Claimant-Secured Party described in paragraph 1 of this Agreement shall be of no force and effect, (ii) the Assignee-Debtor shall be acting in the transaction as the agent of the Assignor and the Annuity shall be owned by Assignor which will continue to have the liability to make the Periodic Payments to Claimant-Secured Party, (iii) Assignee-Debtor shall have no liability to make any Periodic Payments to Claimant-Secured Party, and (iv) the parties hereto agree to cooperate in taking such actions as are reasonably necessary or appropriate to achieve the foregoing.

10. This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the parties hereto and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

11. Assignee-Debtor hereby pledges and grants to Claimant-Secured Party a lien on and security interest in all of Assignee-Debtor's right, title, and interest in the Annuity and all payments therefrom in order to secure the obligation of Assignee-Debtor to make the Periodic Payments. Assignee-Debtor and Claimant-Secured Party shall notify Annuity Issuer of the lien created under this Agreement, and Assignee-Debtor shall deliver the Annuity to Claimant-Secured Party upon execution of this Agreement and receipt by Assignee-Debtor of the Annuity from Annuity Issuer.

17

**EXHIBIT 1**

12.     Assignee-Debtor shall have all rights of ownership and control in the Annuity, including the right to receive and retain all benefits under the Annuity, which are not inconsistent with the security interest granted under paragraph 11, and Claimant-Secured Party shall have no right to anticipate, sell, assign, pledge, encumber, or otherwise exercise any right with respect to the Annuity, so long as Assignee-Debtor has not failed due to insolvency or bankruptcy to make any of the Periodic Payments. If such a failure occurs and is continuing, Claimant-Secured Party shall have all of the rights and remedies of a secured party under the law then in effect in the State of New York.

13.     The Annuity will bear the following legend:

"NOTICE
This annuity contract has been delivered to the possession of _____ for the sole purpose of perfecting a lien and security interest of such person in this contract. _____ is not the owner of, and has no ownership rights in, this contract and may not anticipate, sell, assign, pledge, encumber, or otherwise use this contract as any form of collateral. Please contact the issuer of this contract for further information."

14.     In entering into this Agreement, Claimant-Secured Party represents that he or she has relied on the advice of his or her attorneys, who are the attorneys of his or her choice, concerning the legal and income tax consequences of this Agreement; that the terms of this Agreement have been completely read by and explained to Claimant-Secured Party; and that the terms of this Agreement are fully understood and voluntarily accepted by Claimant-Secured Party.

15.     Any notice to a party hereunder shall be in writing and shall be deemed to have been given when mailed to the party's address of record.

18

**EXHIBIT 1**

Assignor:

By: _____
         *Authorized Representative*

Assignee-Debtor:

By:_____
         *Authorized Representative*

Title: _____

Title: _____

Claimant-
Secured Party: _____

Approved as to Form and Content:

By: _____
         *Attorney for Claimant-Secured Party*

19

**EXHIBIT 1**